# No. 23-2984

## In the United States Court of Appeals
### FOR THE THIRD CIRCUIT

HENRY GRAJALES-EL,

*Appellant*

v.

AMAZON PRIME

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 22-cv-3455 (Honorable R. Barclay Surrick)

## SUPPLEMENTAL APPENDIX
## PAGES SAPPX1 TO SAPPX53

RICHARD G. ROSENBLATT
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600

KARA P. EMRICH
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Appellee*

# TABLE OF CONTENTS

**Page**

Notice of Removal, Filed August 29, 2022 (Dkt. 1) ........................ SAppx1

Amended Complaint, Filed September 27, 2022 (Dkt. 6) .............. SAppx7

    Exhibit A: Letter, Dated April 29, 2020 ............................ SAppx11

    Exhibit B: FICO Trip Feedback .......................................... SAppx13

Motion to Deny Defendants Proposed Order, Filed September 29, 2022 (Dkt. 7) ....................................................................... SAppx16

Declaration of Christopher Magee, Filed October 4, 2022 (Dkt. 9-3) ......................................................................................... SAppx22

    Exhibit A: Mutual Agreement to Individually Arbitrate Disputes ....................................................................... SAppx32

Declaration of Prateek Khanna, Filed October 4, 2022 (Dkt. 9-4) ............................................................................................. SAppx36

    Exhibit A: Mutual Agreement to Individually Arbitrate Disputes ....................................................................... SAppx38

Order, Filed October 2, 2023 (Dkt. 12) ........................................ SAppx42

Notice of Appeal, Filed November 1, 2023 (Dkt. 13) .................... SAppx46

    Attachment: Order, Filed October 2, 2023 .......................... SAppx48

Docket for *Grajales-El v. Amazon Prime*, No. 22-cv-3455 (E.D. Pa.) ...................................................................................... SAppx52

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HENRY GRAJALES-EL, Pro Se, | |
| Plaintiff, | |
| vs. | Civil Action No. |
| AMAZON PRIME, | |
| Defendant. | |

## <u>NOTICE OF REMOVAL</u>

Defendant Amazon Logistics, Inc. ("Amazon"),[1] by and through its counsel, Morgan, Lewis & Bockius LLP, hereby removes this action from the Court of Common Pleas for Lancaster County, Pennsylvania, where it is currently pending, to the United States District Court for the Eastern District of Pennsylvania. In support of this Notice of Removal, Amazon states as follows:

## I.   <u>BACKGROUND AND RELEVANT HISTORY</u>

1.   On May 13, 2022, Plaintiff Henry Grajales-El commenced an action against Amazon entitled *Henry Grajales-El vs. Amazon Prime*, Case No. CI-22-02795 (hereinafter "CI-22-02795"), in the Court of Common Pleas for Lancaster County, Pennsylvania.

---

[1]   Plaintiff incorrectly names Amazon Prime as the defendant in his Complaint. Amazon Prime is a membership program, not an incorporated business entity. Amazon Logistics, Inc. is the proper Defendant. As Plaintiff admits in his Complaint, he was employed by TAC Delivery Service, LLC, not Amazon. *See* Exhibit 1, at "Claim #1," where Plaintiff refers to "TAC delivery Delivery-Subcontractor" and states, this is "where Plaintiff was employed" and "Claim #2," where Plaintiff states, "the Plaintiff was never an employee of Amazon or Amazon Prime." TAC Delivery Service, LLC is a former Delivery Service Partner that contracted to provide services to Amazon Logistics.

2.       On August 9, 2022, the Complaint[2] (with Exhibits A and B) and Civil Cover

Sheet in CI-22-02795, true and correct copies of which are attached hereto as Exhibits 1 and 2,

were served on Amazon's Legal Department at 410 Terry Avenue North, Seattle, WA 98109.

3.       As Amazon received the Complaint on August 9, 2022, it is now acting within the

time period permitted under 28 U.S.C. § 1446 (30 days) to remove CI-22-02795 to the federal

court that embraces the county within which such action is pending.

4.       All processes and pleadings served upon or filed by Amazon in this case, as well

as the docket, are attached hereto as Exhibits 1-3, and no other proceedings have been held in the

Court of Common Pleas for Lancaster County, Pennsylvania.

5.       CI-22-02795 is a civil action asserting slander (Compl. at "Claim 1") and "cruel

and unusual disciplinary methods … designed to cause adverse mental effects" (Compl. at

"Claim 2").[3]

## II.    DIVERSITY JURISDICTION EXISTS

### A.    Complete Diversity of Citizenship Exists

6.       A case may be heard in federal court pursuant to diversity jurisdiction if there is

complete diversity; i.e., all plaintiffs are diverse from all defendants.  28 U.S.C. § 1332(a).  A

defendant may remove an action to federal court under 28 U.S.C. § 1332 provided no defendant

is a citizen of the same state in which the action was brought.  28 U.S.C. § 1441(a), (b).

---

[2]      Plaintiff's Complaint appears to be missing a page or a portion of a page.  *See* Exhibit 1, page 2, which begins mid-sentence with the phrase, "represented in defense of the Plaintiff…"  Amazon contacted the Court of Common Pleas for Lancaster County, Pennsylvania to verify that Amazon had the full Complaint filed by Plaintiff, or, alternatively, to request a complete copy of the Complaint.  The Court informed Amazon on August 16, 2022, that Amazon had a copy of the full Complaint filed by Plaintiff.

[3]      Plaintiff's Complaint does not include numbered paragraphs.  It includes headings, which read in relevant part, "Claim #1" and "Claim #2".

7.    Plaintiff Henry Grajales-El is a citizen of Pennsylvania, where he resides.  His address, as stated in the Cover Sheet for his Complaint, is 660 Boas Street 1416, Harrisburg, Pennsylvania 17102.  *See* Exhibit 2.

8.    For diversity purposes, a corporation is a citizen of "every State and foreign state by which it has been incorporated" as well as "the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]"  *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010).

9.    Amazon Logistics is incorporated under the laws of Delaware, with its principal place of business in Washington State.  Further, no Amazon entity with which Plaintiff could conceivably profess to have any relationship is a citizen of Pennsylvania.

10.    Therefore, for the purposes of removal, and pursuant to 28 U.S.C. § 1332(c), Plaintiff is a citizen of Pennsylvania, Amazon is a citizen of Delaware and Washington, and the parties have complete diversity of citizenship.

**B.    The Amount-in-Controversy Requirement Is Satisfied**

11.    To establish diversity jurisdiction, the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  *See Rosenfield v. Forest City Enterprises, L.P.*, 300 F. Supp. 3d 674, 677 (E.D. Pa. 2018) ("The amount in controversy is generally decided from the face of the complaint itself.")

SAppx3

12.     Here, Plaintiff demands "an award in the amount of $10,000,000,000.00."[4] *See* Compl. at "Compensation."  In addition to alleging that the "requested compensation shall cover lost wages," Plaintiff also alleges that it will cover punitive damages for "physical harm," including "headaches, dizziness, vomiting and sparking issues with his Post-Traumatic Stress Disorder."

13.     While Defendant denies any and all liability to Plaintiff, there can be no doubt that Plaintiff has alleged an amount in controversy that exceeds $75,000, exclusive of interests and costs.

14.     Therefore, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441 (a)-(b), Plaintiff's state court action may be removed to federal district court, because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiff and Defendant.

### III.   VENUE IS PROPER AND ALL PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

15.     Plaintiff's state court action, which was commenced in the Court of Common Pleas for Lancaster County, Pennsylvania, may be removed to the United States District Court for the Eastern District of Pennsylvania because it is the federal district court that embraces Lancaster County within its jurisdiction.  *See* 28 U.S.C. § 1441 (a) (providing that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[], to the district court of the United States for the district and division embracing the place where such action is pending").

---

[4]     This Notice of Removal addresses the claimed nature and amount of damages placed at issue by Plaintiff.  Amazon's reference to a specific damages amount is solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum.  Amazon maintains that Plaintiff's claims are without merit and that Amazon is not liable to Plaintiff.  Amazon specifically denies that Plaintiff has suffered any damage or loss as a result of any act or omission by Amazon.  No statement or reference contained in this Notice of Removal constitutes an admission of liability or a suggestion that Plaintiff will or could recover any benefits or damages.

SAppx4

16.     Notice of removal of this action will be given to the Court of Common Pleas for Lancaster County, Pennsylvania by filing in state court the Notice of Filing of Removal of Action to the United States District Court for the Eastern District of Pennsylvania (hereinafter "Notice of Filing of Removal").

17.     A copy of this Notice of Removal has been served upon Plaintiff by first-class mail and a copy of this Notice of Removal is being filed in the Court of Common Pleas for Lancaster County, Pennsylvania, pursuant to 28 U.S.C. § 1446 (d), as an attachment to the aforementioned Notice of Filing of Removal.

**IV.     CONCLUSION**

18.     By filing a Notice of Removal in this matter, Amazon does not waive its right to assert any and all defenses and/or objections in this case.

WHEREFORE, for all the foregoing reasons, Amazon respectfully requests that the above-captioned action be removed from the Court of Common Pleas for Lancaster County, Pennsylvania, and that this Court exercise jurisdiction over further proceedings.


Dated:  August 29, 2022

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Kara P. Crawford*
Kara P. Crawford
Richard G. Rosenblatt
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5511/5278
Facsimile: (215) 963-5001
richard.rosenblatt@morganlewis.com
kara.crawford@morganlewis.com

*Attorneys for Defendant*

SAppx5

## <u>CERTIFICATE OF SERVICE</u>

I, Kara P. Crawford, hereby certify that on August 29, 2022, a true and correct copy of

the foregoing Notice of Removal was served via first-class mail upon the following:

Henry Grajales-EL
660 Boas Street 1416
Harrisburg, PA 17102
(717) 497-3381
*Plaintiff*


*/s/ Kara P. Crawford*
Kara P. Crawford

In The **UNITED STATES COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

HENRY GRAJALES-EL

Plaintiff,  **PROSE**

Vs.                                                          **Case# 22-CV-3455**

AMAZON Logistics Inc.

Defendant.

### CERTIFICATE OF SERVICE OF LEGAL PAPERS OTHER THAN ORIGINAL PROCESS

I, Natalya Gasova, mailed copies of Plaintiff's documents in this matte; I certify that copies of following documents

### 1. AMENDED CIVIL COMPLAINT PURSUANT TO RULE 15

were serviced BY first class mail,

filed on 9-26-2022 was sent to at:  **CLERK OF THE EASTERN DISTRICT US COURT HOUSE**

**601 MARKET ST**

**Philadelphia, PA. 19106**

BY FIRST CLASS MAIL on 9-26-2022

Print NAME *Natalya V Gasova*

Signature _____

**Date** 9-26-2022

SAppx7

Case: 23-2984    Document: 17    Page: 9    Date Filed: 03/06/2024

# In The UNITED STATES COURT
# EASTERN DISTRICT OF PENNSYLVANIA

HENRY GRAJALES-EL
Plaintiff, **PRO SE**

Vs.

AMAZON Logistics Inc.
Defendant.

## Case# 22-CV-3455
### AMENDED
### COMPLAINT
### RULE 15

## FORWARD

1.      Plaintiff moves to **AMEND the complain under RULE 15** to address some of the issues Defendants attorney brought to attention in their Notice of Removal. There was also another matter that came up in this honorable courts Notice of Guidelines for 'representing yourself, regarding Pro Se' and Class Actions.

     a. The correct Defendant is Amazon Logistics Inc., "AMAZON".  not Amazon Prime.

     b. A miss understanding in the complaint filed with Lancaster, Pennsylvania Court of Common Pleas needs to be addressed..."missing info on a mid-sentence statement". This was miss print.

     c. Plaintiff is adjusting the Demand amount form $10,000,000,000.00 to $500,000,000.00.
A **PRO SE Plaintiff** can not enter a CLASS as part of this action.

## JURISDICTION

2.      Plaintiff agrees a Diversity of Citizenship exist, and that the Demand amount exceeds $75.000. The US. Eastern District Court is the correct venue to adjudicate this case, do to the fact that the Defendant is not a citizen of Pennsylvania, and that the actions made against the Plaintiff in this Amended Complaint happened at Amazon Logistics Inc. DPH-7 addressed at 10 Industrial Rd, Elizabethtown, Lancaster county, Pennsylvania 17022.  Across State lines.

SAppx8

Case: 23-2984     Document: 17     Page: 11     Date Filed: 03/06/2024

## CLAIM

3.    AMAZON produced a document that <u>defamed Plaintiff's' reputation</u>. The document made a lot of accusations against the Plaintiff, one accusation found proven to be clearly false. With this false documentation, Amazon tried to have the Plaintiff, Henry Grajales-EL, terminated by his employer. Termination didn't work, because Plaintiff was not an employee of AMAZON. So, AMAZON subjugated the Plaintiff to an **unmerited** corrective disciplinary action, that had <u>undisclosed</u> harmful adverse mental effects that Plaintiff suffered. And he was never compensated for his time spent in corrective action. No consideration was afforded to the Plaintiff's disabilities issues. And still to this day AMAZON has not even issued an apology.

4.    On April 29, 2020 Amazon OTR Safety lead submitted a report to TAC Delivery regarding Plaintiff, Henry Grajales-EL. This documented report lead to a disciplinary action against Henry Grajales-EL. **See Attached "Exhibit A"**, is a copy of said report. In this report, many claims were made against the defendant, without solid proof. "**Speeding**"... was one of the **FALSE** claims made against the Plaintiff, Henry Grajales-EL.

5.    According to the e-Mentor service that Amazon uses to monitor its drivers. It was documented on 29th April 2020, starting at the logging time of 6:49am, till the end of the day when Plaintiff logged out that he was **NOT SPEEDING**.  **See attached EXHIBIT "B"**. Plaintiff took the time out on a work break to research his e-Mentor history. This **exhibit "B"** is a cell phone screen shot taken during a work break at 11:35am shortly after Amazon's e-Mentor driving monitoring app completed its driving assessment for the date for 29th April 2020.

6.    Plaintiff, Henry Grajales-EL is registered as a **worker with disabilities** in the state of Pennsylvania. On the morning of 29 April 2020, the Plaintiff, Henry Grajales-EL did declare to his supervisor that he was very ill due to diabetic issues. Plaintiff was given a choice....decided he will keep it moving at work. During the entire day he was repeatedly stopping his deliveries to vomit on the side of the road and clean himself up from defecating on himself.

7.    None of this information regarding plaintiffs disabilities or the e-Mentor report was able to be represented in defense of the Plaintiff, because Amazon Logistics Inc. has no established disciplinary protocols put in place for delivery drivers to protect their human rights to object or defend oneself against any accusations. There is no right to defend oneself or be heard before a verdict is rendered that leads to disciplinary corrective actions.

8.    Without any kind of a **fair impartial investigation** or mediation allowed. Amazon took "what seem to be <u>malicious actions</u>" against the Plaintiff, Henry Grajales-EL, to have him terminated. Termination was rejected by TAC Delivery. Instead, without Plaintiffs consent and knowledge, Henry Grajales-EL, was forced into an **UNMERITED** disciplinary corrective action, where <u>he was not compensated for his time.</u> made sick with headache and vomiting; Plus, Plaintiff suffered a Post-Traumatic Stress break down.

(page2 of 7)

SAppx9

Case: 23-2984     Document: 17     Page: 12     Date Filed: 03/06/2024

9.    The disciplinary/corrective action violated The plaintiff Henry Grajales-EL human rights. Plaintiff was subject to cruel and unusual disciplinary methods as punishments, which were deliberately designed to cause harmful adverse mental effects. As a result of this cruel and unusual method of discipline; Plaintiff, Henry Grajales-EL suffered headaches, dizziness, vomiting and it triggered issues with Plaintiffs Post-Traumatic Stress Disorder.

10.    Plaintiff Henry Grajales-EL was discriminated against. Amazon deliberately ignored Plaintiffs issues with his physical disabilities in relation to Diabetes and mental issues.

## Jury demanded

Request for trial by Jury is demanded.

11.

## COMPENSATION

12.    Plaintiff, Henry Grajales-EL, request an award in the amount of $500,000,000.00.

## 28 U.S. Code:§1746

13.    The Plaintiff, Henry Grajales-EL, declares the forgoing, along with the two exhibits attached with this complaint, as true and correct to the best for his knowledge.  All stated above is declared under the penalties of perjury on the date noted below.

Original Signature

Signed: _Henry Grajales-El_     DATE: _9/26/2022_

Plaintiff, Henry Grajales-EL

**(page 3 of 7)**

SAppx10

Case: 23-2984     Document: 17     Page: 13     Date Filed: 03/06/2024

# EXHIBIT A

(page 4 of 7)

EX = A

Case: 23-2984     Document: 17     Page: 14     Date Filed: 03/06/2024

Wednesday April 29, 2020

TACD

Driver: Henry Grajales-EL

Route: CX37 (York County, York, Pa.)

I met up with Henry executing his route at 10:57am on his 61st stop of RT CX37 located at 2784 MEADOW CROSS WAY. I followed Henry as he delivered at several stops to observe his delivery behavioral habits. I observed from my personal vehicle at an approx. distance of 120 feet while parked behind multiple cars along the right side of the road (when possible) in the Meadow Crossings Home Development. This is a very nice neighborhood consisting of custom homes starting in the $350,000 range plus. Most homes are on ¼ acre lots with a pristine sidewalk around the neighborhood. I observed young children out playing in driveways, walking dogs and older children on bicycles as well as adults walking.

When I first came upon Henry he was making his delivery at the customer's door. The branded van was parked on the opposite side of the road facing oncoming traffic, idling with no hazard lights on. Henry continued to travel up around the loop making deliveries while driving on the OPPOSITE side of the road with NO HAZARD lights on. He repeatedly left the driver's side door open while delivering. I drove past Henry, around the loop of Meadow Cross Way and parked behind a BMW where I observed Henry coming down the hill towards me on the correct side of the road (still no hazard lights). He passed his stop, reversed 50 feet, left the van idling with no hazards and the driver's door hanging open into the street while delivering at this stop. Henry pulled up to the intersection to make a delivery to a home on the corner. Here, Henry stopped the branded van on the opposite side of the road partially in the intersection, left the side sliding door open facing the middle of the intersection while making a delivery at the corner property on the driver's side. He did not have the hazard lights on and walked through this customer's well-manicured lawn. After leaving the package he lifted up his shirt and wiped his face. H then drove down the hill past me at a high rate of speed to the bottom of the hill to make another delivery again with no hazard lights. Speed limit in this neighborhood is 25mph.

At this point I was in contact with Amanda Glenn and I returned to the station. See attached photos

Amy Kessler

OTR Safety Lead

DP127

Case: 23-2984     Document: 17     Page: 15     Date Filed: 03/06/2024

# EXHIBIT B

**(page6 of 7)**

SAppx13

EX B

Case: 23-2984     Document: 17     Page: 16     Date Filed: 03/06/2024



PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

U.S. POSTAGE PAID
HARRISBURG, PA
SEP 26 22
AMOUNT
$30.20
R2304E105917-10

1007    19106

# PRIORITY
## ★ MAIL ★
# EXPRESS™

### OUR FASTEST SERVICE IN THE U.S.

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

**EMS**

EP13F July 2013    OD: 12.5 x 9.5

P S 1 0 0 0 1 0 0 0 0 0 6

**UNITED STATES**
**POSTAL SERVICE** ®

# PRIORITY
# MAIL
# EXPRESS®

EI 367 985 614 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE (   )
Henry Grajales-El
660 Boas St #146
Harrisburg PA 17102

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1)
Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4)
Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's
mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE (   )
Clerk of Eastern District US Court
House
601 Market St
Philadelphia PA 19106

ZIP + 4® (U.S. ADDRESSES ONLY)
19106-____

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

← **PEEL FROM THIS CORNER**

‡ Money Back Guarantee for U.S. destinations only.

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☒ 1-Day    ☐ 2-Day    ☐ Military    ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
| 17106 | 9/27/22 | $ 31.69 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 09/26/22 | ☐ 12:00 PM ☐ 3:00 PM | $ | $ |

| Time Accepted | ☐ AM ☒ PM | Return Receipt Fee | Live Animal Transportation Fee |
| 3:10 | | $ 3.25 | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
| $ | $ | $ 31.69 |

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
| | | A.G |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | ☐ AM ☐ PM | Employee Signature |

| Delivery Attempt (MM/DD/YY) | Time | ☐ AM ☐ PM | Employee Signature |

LABEL 11-B, MAY 2021    PSN 7690-02-000-9996

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

**UNITED STATES**
**POSTAL SERVICE** ®

RECEIVED
SEP 2 7 2022

This envelope is made from post-consumer waste. Please recycle – again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.

In The **UNITED STATES COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

HENRY GRAJALES-EL
Plaintiff, **PROSE**

Vs.

**Case# 22-CV-3455**

**Proposed Order**

AMAZON Logistics Inc.
Defendant.

judge: R Barclay Surrick

[PROPOSED] ORDER Denying DEFENDANT'S MOTION. This matter having come before the
Court upon Defendant AMAZON Logistics Inc. ("AMAZON") motion MOTION to Compel Arbitration

Plaintiff has not been properly serviced by the Defendant regarding "Motion to Compel Arbitration
with attached and supporting documents". The Defendant is also given notice and reminder to service
Plaintiff "via mail" with a Proof of Service, since the Plaintiff has not given consent to electronic
service., pursuant to RULE 5.8.(a)(b)and(c).

The Court having reviewed the motion and related papers; due and proper notice of the Motion having
been provided; and after due deliberation and sufficient cause appearing therefore, the Court finds that
the Defendants motion should be DENIED.

WHEREFORE, IT IS HEREBY ORDERED

_____
HON. **R Barclay Surrick**
UNITED STATES DISTRICT JUDGE

In The **UNITED STATES COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

HENRY GRAJALES-EL
Plaintiff, **PROSE**


Vs.

                                   **Case# 22-CV-3455**

                                  **Motion to Deny Defendants**
                                     **Proposed Order**

AMAZON Logistics Inc.
Defendant.
                                     **Judge; R Barclay Surrick**

---

**1.**     Plaintiff Motions this honorable court to deny Defendants Proposed Order. Do to the facts that Plaintiff has not been properly serviced via mail by the Defendant with their Motion and other Documents submitted and entered into the record on 6 Sept. 2022.  Plaintiff is shooting in the dark in response to Defendants Motion

**Rule 5. Service and filing of pleadings and other papers.**

**2.**     Plaintiff, Henry Grajales-El, reports to the Court that Plaintiff was not serviced any documents Defendant filed to the "LANCASTER" or the EASTERN DISTRICT courts.

**3.**     It is noticed that the Defendant filed motions to Compel Arbitration with supporting Memorandum of laws, declarations of Prateek Khanna and Christopher Magee and a "Proposed Order" with the Eastern District Court. Without servicing sign off filings to the Plaintiff with "proof of service". A clear violation of Rule 5.8.(a)(b) and(c)

**4.**     The Plaintiff found out that the Defendants responded to the Lancaster court by checking online with the Lancaster county web site, and seen the "Notice of Removal". Plaintiff did not receive any filings with proof of service via mail for the "Notice of removal". Nor did the Plaintiff receive documents with signatures filed on record with the EASTERN DISTRICT for September 6, 2020.

**5.**     Plaintiff made a call to the Clerk of the Eastern District Court for information regarding

(1page of 3)

case updates and filings. The Eastern District Court DOCKET record reflect the Defendant did not service the Plaintiff.

**6.**    Pursuant to Local Rule 5.8.(a)(b)and(c), the Plaintiff has to <u>give consent</u> to electronic service.

## <u>Rule 5.8.(a)(b)&(c)</u>

**7.**    (a) When an ECF Filing User electronically files a pleading or other document using the ECF system, a Notice of Electronic Case Filing shall automatically be generated by the system, and shall be sent automatically to all parties entitled to service under the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Local Rules of the Eastern District of Pennsylvania <u>who have consented to electronic service</u>. Electronic service of the Notice of Electronic Case Filing constitutes service of the filed document to all such parties and shall b e deemed to satisfy the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and Rule 49 of the Federal Rules of Criminal Procedure.

**8.**    (b) All documents filed using the ECF system <u>shall contain a Certificate of Service stating</u> that the document has been filed electronically and is available for viewing and downloading from the ECF system. The <u>Certificate of Service</u> *<u>must identify the manner in which service on</u> <u>each party was accomplished, including any party who has not consented to electronic service.</u>*

**9.**    (c) Parties who have not consented to electronic service are ***entitled to receive a paper copy of any electronically filed pleading or other document***. Service of such paper copy must be made according to the **Federal Rules of Civil Procedure,** the Federal Rules of Criminal Procedure and the Local Rules of the Eastern District of Pennsylvania.

**10.**    Till this current date, Plaintiff **is not required  to give consent  to "ECF" and** <u>has given no</u> <u>such consent to electronic services.</u>  The Plaintiff requires the Defendants to provide "Proof of Service"  and paper copies of all documents filed with the courts via first class mail. Plaintiff understands that Defendants attorney uses Pacer-Monitor. However, Plaintiff sees that "OLD SCHOOL only" is the best way for parties to move forward, because "PACER" seems not to be able to keep "pace" with submitted document filings.

**11.**    It is also noticed that the Eastern District Court has not registered into PACER MONITOR Plaintiffs Amended Civil Complaint, that was properly mail with Plaintiff's Rebuttal to Descendant's NOTICE of REMOVAL and "proof of service" sign off by Natalya Gasova.  However, entered Rebuttal by HENRY GRAJALES-EL to Defendant's Notice of Removal. (fdc) Entered into PACER Monitor record Thursday, Sept 15, 2022 at 11:10 am. Without reflecting the Proof of service and Amended Complaint.

(2 page of 3)

**12.**    As a result of this impasse regarding a Rule 5 breach. The Plaintiff has not been afforded an equitable chance to see Defendant's' MOTION to Compel Arbitration. Nor, does the Plaintiff have reasonable time to respond to Defendants 6 Sept. 2022 filings. Plaintiff, moves to fill this Motion to Deny Defendants Motion. Plaintiff also enters an AMENDED Complaint pursuant to Rule 15, which is mailed into the court separately with "Proof of Service".

**13.**    Plaintiff would motion under Rule 11... However it is not necessary. The Plaintiff humbly request of this Honorable court to give a healthy notice to the defendants attorney to comply with Plaintiffs request to have all filings serviced with proof of service "via mail". Thank you.

Respectfully Submitted,

_Henry Grajales-EL_

PROSE', Plaintiff, Henry Grajales_EL

9-26-2022

DATE

(3 page of 3)

In The **UNITED STATES COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

HENRY GRAJALES-EL

Plaintiff, **PROSE**

Vs.                                                          **Case# 22-CV-3455**

AMAZON Logistics Inc.

Defendant.

### CERTIFICATE OF SERVICE OF LEGAL PAPERS OTHER THAN ORIGINAL PROCESS

I, Natalya Gasova, mailed copies of Plaintiff's documents in this matte; I certify that copies of of the two following documents

## 1. PROPOSED ORDER TO DISMISS DEFENDANTS MOTION

## 2. PLAINTIFF'S MOTION TO DISMISS DEFENDANTS MOTION

were serviced BY first class mail,

filed on *9-26-2022* was sent to at:   CLERK OF THE EASTERN DISTRICT US COURT HOUSE

601 MARKET ST

Philadelphia, PA. 19106

BY FIRST CLASS MAIL on ___ *9-26-2022*

Print NAME *Natalya V GASOVA*

Signature ___

**Date** ___ *9-26-2022*



Case: 23-2984 Document: 17 Page: 23 Date Filed: 03/06/2024

CERTIFIED MAIL

7022 0410 0002 3971 9227

U.S. POSTAGE PAID
HARRISBURG, PA
SEP 26, 22
AMOUNT
**$5.68**

**FROM:**

Henry GraJales-El
660 Boas St #1416
Harrisbury PA 17102

**TO:**

Clerk of the Eastern District US
Court House
601 Market St
Philadelphia, PA 19106

RECEIVED
SEP 29 2022

Utility Mailer
10 1/2" x 16"

Ready**Post**

SAppx21

DocuSign Envelope ID: 349A95E3-1414-4EC2-A588-E9899FF05D6B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HENRY GRAJALES-EL, Pro Se, | |
| Plaintiff, | |
| vs. | Civil Action No. 2:22-cv-03455 |
| AMAZON PRIME, | |
| Defendant. | |

**DECLARATION OF CHRISTOPHER MAGEE**

I, Christopher Magee, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      My name is Christopher Magee. I am an owner of TAC Delivery Service LLC ("TACD" or the "Company"). I am over twenty-one years of age and otherwise competent to make this declaration. I make this declaration based on my personal knowledge, my review of Company business records, and my familiarity with the systems used by the Company.

2.      From June 2019 to June 2022, TACD provided local delivery services to Amazon Logistics, Inc. TACD employed delivery drivers (called Delivery Associates) who drove delivery vans and made local deliveries. TACD hired Henry Grajales-EL ("Plaintiff") in November 2019 as a Delivery Associate. Plaintiff picked up packages from an Amazon warehouse in Elizabethtown, Pennsylvania (known as "DPH7"), and delivered those packages to Amazon customers' homes or businesses in the surrounding area.

3.      TACD employed Plaintiff until March 2021, when TACD relocated to Maryland. Plaintiff did not make deliveries for TACD outside of Pennsylvania or deliveries that required him

1

SAppx22

DocuSign Envelope ID: 349A95E3-1414-4EC2-A588-E9899EF0FD6B

to cross state lines while he was working for TACD. In June 2022, TACD voluntarily left the Amazon Delivery Service Partner Program.

4.    When TACD wanted to hire a new employee as a Delivery Associate, TACD required that person to complete an "onboarding" process before they started working. During onboarding, the prospective employee provided certain information to TACD, registered with Amazon as a TACD delivery driver, and reviewed and accepted an Arbitration Agreement.

5.    This is how the onboarding process worked. When I intended to hire a new employee, I created a profile for the prospective employee using their name and e-mail address and caused the onboarding system to send the individual an e-mail. The e-mail notified the individual of TACD's invitation to "Join TAC Delivery Service LLC to deliver Amazon packages" and provided instructions to access the steps in the onboarding process via a "Sign in" link.

6.    After clicking the "Sign in" link, the web browser opened a "Welcome" page that stated "TAC Delivery Service LLC has invited you to join their delivery company" and that to join the Company the individual must create an account.

7.    In the first step to create an account, the individual verified their e-mail address with a unique one-time password that the system sent only to their e-mail address. The individual then set up a personal, private password (TACD did not have the password) and was instructed to download an application on their mobile device to continue setting up the account.

8.    On the mobile device, the prospective employee launched the application and signed-in with their email address and private password. Then, the application instructed them to "complete the tasks on the following pages in order to finish setting up your account." The individual then clicked "Continue" and the next page displayed the following menu:

SAppx23

DocuSign Envelope ID: 349A95E3-1414-4EC2-A588-E9899EE0FD6B



9.      When the prospective employee tapped the "Arbitration Agreement" line on the "Get Started" menu, the application displayed the agreement and allowed the individual to tap the screen to scroll through the full text of the agreement (see example screens below). A copy of the Arbitration Agreement that was shown in the application is also attached as Exhibit A.

SAppx24

DocuSign Envelope ID: 349A95E3-1414-4EC2-AE88-E9890FF505D6B



**MUTUAL AGREEMENT TO INDIVIDUALLY ARBITRATE DISPUTES**

It is the Company's goal to provide you (the "Employee") with a rewarding work environment. Disputes related to work can arise, however, and, if not resolved informally, can be disruptive, costly, and time consuming to resolve. Arbitration is an alternative to the traditional lawsuit and may resolve disputes more quickly and with less cost. In a traditional lawsuit, issues are resolved in court by a judge or a jury. In arbitration, issues are resolved outside of court by an independent third-party, known as an arbitrator.

<u>MANDATORY ARBITRATION</u>. THE EMPLOYEE AND COMPANY AGREE THAT ANY COVERED CLAIM (DEFINED BELOW), WHETHER BASED IN CONTRACT, TORT, STATUTE, COMMON LAW, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY, SHALL BE SUBMITTED TO INDIVIDUAL BINDING ARBITRATION.



**Covered Claims.** Except as explained in the section "Claims Not Covered" below, this Mutual Agreement to Individually Arbitrate Disputes (this "Agreement") covers all past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, "claims") under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof, and/or (b) a Company policy or practice, or the Company's relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against the Company and/or any Covered Parties (defined below), or that the Company may have against Employee.

The claims covered by this Agreement include, but are not limited to claims asserted under or relating to: (i) Title VII of the Civil Rights Act of 1964 and similar state statutes; (ii) Age Discrimination in Employment Act and similar state statutes; (iii) Fair Labor Standards Act or similar state statutes; (iv) Family and Medical Leave Act or similar state statutes; (v) Americans with Disabilities Act or



similar state statutes; (vi) injuries you believe are attributable to the Company under theories of product liability, strict liability, intentional wrongdoing, gross negligence, negligence, or respondeat superior; (vii) actions or omissions of third parties you attribute to the Company; (viii) claims brought pursuant to actual or alleged exceptions to the exclusive remedy provisions of state workers compensation laws; (ix) Consolidated Omnibus Budget Reconciliation Act of 1985; (v) federal and state antitrust law; (xi) issues regarding benefits, bonuses, wages, penalties, co-employment, or joint employment; (xii) contracts between you and the Company; (xiii) personal or emotional injury to you or your family; (xiv) federal, state, local, or municipal regulations, ordinances, or orders; (xv) any common law, or statutory law issues relating to discrimination by sex, race, age, national origin, sexual orientation, family or marital status, disability, medical condition, weight, dress, or religion or other characteristic protected by applicable law; (xvi) wrongful retaliation of any type, including retaliation related to workers' compensation laws or employee injury benefit plan actionable at law or equity; and



benefit plan actionable at law or equity; and (xvii) misappropriation of confidential information or other acts or omissions by you.

Without limiting the above, the Employee and the Company each specifically acknowledges and agrees that all claims involving minimum wages, overtime, unpaid wages, expense reimbursement, wage statements, and claims involving meal and rest breaks shall be subject to arbitration under this Agreement.

The Employee and the Company each specifically acknowledges and agrees that any claims brought by the Employee against any of the Covered Parties, whether brought jointly or severally with claims against the Company, shall be subject to arbitration under this Agreement. "Covered Parties" means the Company, any entity formerly or currently owned, affiliated, controlled or operated by the Company (a "company entity"), clients of the Company or a company entity, and the former and current officers, directors, managers, employees, owners, attorneys, agents, and vendors of the Company and/or a company entity and/or

SAppx25



Company and/or a company entity and/or clients of the Company.

**Claims Not Covered.** This Agreement does not apply to: (i) claims for workers' compensation or unemployment benefits; (ii) claims expressly precluded from being arbitrated by a governing federal statute; (iii) claims that, under applicable state law that is not preempted by the Federal Arbitration Act, the parties cannot agree to arbitrate; (iv) claims that must be brought before the National Labor Relations Board ("NLRB"); (v) claims for any relief asserted under or governed by the Employee Retirement Income Security Act of 1974 ("ERISA") (the resolution of ERISA claims will be governed by the terms of the applicable plan and/or applicable law); (vi) actions to confirm, vacate, modify, or correct an arbitrator's award; (vii) sexual harassment or sexual assault claims, except if the Employee chooses to submit them to arbitration under the terms of this Agreement; and (viii) nothing in this Agreement prohibits the filing any claim or charge with a government administrative agency (for example, the Equal Employment Opportunity Commission, NLRB, Securities



Opportunity Commission, NLRB, Securities and Exchange Commission, or a similar state regulatory agency). To the extent such a claim is not resolved before the agency, it is subject to arbitration under this Agreement rather than proceeding in court.

**Waiver of Class, Collective, Consolidated and Representative Action Claims.** Each of the Employee and the Company expressly intends and agrees, to the absolute maximum extent permitted by law, that: (a) class action, collective action, or consolidated action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (b) representative action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (c) each will not assert class action, collective action, consolidated action or representative action claims against the other in arbitration or court or otherwise; and (d) the Employee and the Company shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. No arbitrator



interests of any other person. No arbitrator selected to arbitrate any claim covered by this Agreement is authorized to arbitrate any claim on a class, collective, consolidated, or representative basis.

In the event the waiver of representative actions is found to be unenforceable in whole or in part, then the representative action will be heard in court, not arbitration, as to the portion of the representative claim to which the waiver is found to be unenforceable and all other Covered Claims will remain subject to arbitration. In that event, the representative claim in court shall be stayed until the arbitration is concluded, unless such stay is contrary to applicable law.

Notwithstanding any provision in the applicable arbitration rules, a court of law must resolve any dispute concerning the validity and enforceability of the Agreement, and the validity, enforceability or interpretation of the provisions pertaining to class, collective, and representative action waivers. The arbitrator must resolve all other disputes, including the arbitrability of claims pursuant to such other provisions.



**Neutral Arbitrator.** The arbitration will be administered by an independent and neutral arbitrator from the American Arbitration Association ("AAA") in accordance with the AAA Employment Arbitration Rules and Mediation procedures ("AAA Rules") available online at www.adr.org/employment (or to be provided upon request). If, however, the AAA Rules are inconsistent with the terms of this Agreement, the terms of this Agreement shall govern. The arbitrator has no relationship with the Company and, just as a judge in a lawsuit would, provides an impartial resolution to the dispute. The arbitrator will be selected by mutual agreement of the parties from a list of arbitrators provided by the AAA. If for any reason the AAA will not administer the arbitration, the party seeking arbitration may initiate the arbitration with JAMS (www.jamsadr.com) or other recognized arbitration services provider.

**Claims Procedure.** A demand for arbitration must be in writing and filed with AAA. Written notice of any Company claim will be delivered by certified or registered mail, return receipt requested, to the last known address of Employee. The written notice shall identify

SAppx26

DocuSign Envelope ID: 349A95E3-1414-4EC2-AE88-E9890FF505D6B



Employee. The written notice shall identify and describe the nature of all claims asserted and the facts upon which such claims are based. Written notice of arbitration shall be initiated within the same time limitations that federal or state law applies to those claim(s).

**Arbitration Fees and Costs.** The Employee will pay $200 towards any arbitration filing fee, and the Company will pay all other arbitration filing fees as well as the arbitrator's fees. If any party prevails on a statutory claim that affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the party can recover attorneys' fees and costs to the same extent as if the claim had been brought in court. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

**Applicable Law and Effect of Decisions.**

- Interpretation and Enforcement of the Agreement: The Federal Arbitration Act ("FAA") and federal common law applicable to arbitration shall govern the interpretation and enforcement of this Agreement. If, for any reason, the FAA or



interpretation and enforcement of this Agreement. If, for any reason, the FAA or federal common law is found not to apply to this Agreement (or its agreement to arbitrate), then applicable state law shall govern.

- Pre-hearing Motions: Only claims that are recognized under existing law may be heard by the arbitrator. Any party to the arbitration shall have the right to file a motion to dismiss and/or a motion for summary judgment, which the arbitrator shall decide by application of the standards under the Federal Rules of Civil Procedure governing such motions.
- Substantive Law: The arbitrator shall apply the substantive state or federal law (and the law of remedies, if applicable) applicable to the claim(s) asserted.
- Written Decisions and Awards: The arbitrator shall render a written decision explaining his or her findings and conclusions. The arbitrator's decision shall be final and binding upon the parties to the arbitration, subject only to review under the FAA (or applicable



**Waiver of Trial by Jury.** Each of the Employee and the Company understands and fully agrees that by entering into this Agreement to arbitrate, each agrees to resolve all claims through arbitration and is giving up the right to have a trial by jury and the right of appeal following the rendering of a decision except on the grounds for reviewing an arbitration award under the Federal Arbitration Act ("FAA") or applicable state law.

**Term of Agreement.** This Agreement to arbitrate shall survive the termination of Employee's employment.

**Entire Agreement.** This Agreement constitutes the entire agreement between the Company and Employee regarding the subject matter herein and supersedes any and all prior agreements and understandings regarding the subject matter. This Agreement cannot be amended or modified except by a written agreement between the parties.

**Employee Acknowledgment.** I understand that by clicking on the "I Agree and Accept" Button below that I agree to the terms of, and



review under the FAA (or applicable state law).

- No Preclusive Effect: The arbitrator's decisions and awards shall have no preclusive effect as to issues or claims in any other arbitration or court proceeding, unless all of the parties in the other proceeding were also a named party in the arbitration in which the award or decision was issued.

**Severability.** If any provision of this Agreement to arbitrate is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such adjudication shall not affect the validity of the remainder of this Agreement to arbitrate. The only exception is that this Agreement is not, and shall never be construed as, reformed to be, or enforced as if it were, an agreement to arbitrate claims on a class, collective, consolidated, or representative basis. Stated differently, under no circumstance will a claim be allowed to proceed in arbitration as a class action, collective action, consolidated action, or representative action.

SAppx27

DocuSign Envelope ID: 349A95E3-1414-4EC2-A588-E9890EE0FD6B



10.     Once the prospective employee scrolled through the whole Arbitration Agreement, they could tap or click the box to the left of "I Agree and Accept," and then tap "Continue." They could not click "Continue" without first clicking the "I Agree and Accept" button. After the prospective employee clicked both, the application displayed the menu screen with a green checkmark indicating the prospective employee agreed to the Arbitration Agreement:

SAppx28

DocuSign Envelope ID: 349A95E3-1414-4EC2-A588-E9899EF0FD6B



11.     The onboarding process gave the prospective employee as much time as they wished for reviewing the terms of the Arbitration Agreement. For example, they could review the Arbitration Agreement on one day and then return to the application on another day and click to accept the Arbitration Agreement at that time.

12.     The Arbitration Agreement allowed the individual to acknowledge their agreement to be bound by the Arbitration Agreement by tapping "I Agree and Accept." The last paragraph of the Arbitration Agreement states, directly above the button that reads "I Agree and Accept":

> **Employee Acknowledgment**. I understand that by clicking on the "I Agree and Accept" Button below that I agree to the terms of, and agree to be bound by, this Agreement. I further agree and acknowledge that my acceptance of or continuing employment with the Company provides further evidence of my agreement to accept and be bound by the terms of this Agreement. I understand that this Agreement will remain in effect after my employment ends and that nothing in this Agreement modifies the at-will nature of my employment.

SAppx29

DocuSign Envelope ID: 349A95E3-1414-4EC2-A588-E9899EE0FD6B

13.    TACD was not able to access the prospective employee's account and could not accept the Agreement for the prospective employee – the prospective employee had to do that.

14.    Plaintiff accepted the Arbitration Agreement in the onboarding process by completing the steps above.

15.    Only after successfully completing all of the steps in the onboarding process could a prospective employee become a TACD Delivery Associate and deliver packages. In fact, as shown in the Get Started menu (*see, e.g.,* ¶¶8-10), a prospective employee could not complete three separate onboarding tasks without first reviewing, accepting and agreeing to the Arbitration Agreement.

[SIGNATURE PAGE FOLLOWS]

SAppx30

DocuSign Envelope ID: 349A95E3-1414-4EC2-AE88-F8899EF0FD6B

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.

Dated: _____    September 6, 2022 | 10:08:31 AM PDT

_____
Christopher Magee

DocuSign Envelope ID: 349A95E3-4414-4EC2-AE88-E9899EF9FD6B

# EXHIBIT A

DocuSign Envelope ID: 348A95E3-1411-4EC2-AE88-E8899EF8FD6B

## MUTUAL AGREEMENT TO INDIVIDUALLY ARBITRATE DISPUTES

It is the Company's goal to provide you (the "Employee") with a rewarding work environment. Disputes related to work can arise, however, and, if not resolved informally, can be disruptive, costly, and time consuming to resolve. Arbitration is an alternative to the traditional lawsuit and may resolve disputes more quickly and with less cost. In a traditional lawsuit, issues are resolved in court by a judge or a jury. In arbitration, issues are resolved outside of court by an independent third-party, known as an arbitrator.

**MANDATORY ARBITRATION. THE EMPLOYEE AND COMPANY AGREE THAT ANY COVERED CLAIM (DEFINED BELOW), WHETHER BASED ON CONTRACT, TORT, STATUTE, COMMON LAW, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY, SHALL BE SUBMITTED TO INDIVIDUAL BINDING ARBITRATION.**

**Covered Claims.** Except as explained in the section "Claims Not Covered" below, this Mutual Agreement to Individually Arbitrate Disputes (this "Agreement") covers all past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, "claims") under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof, and/or (b) a Company policy or practice, or the Company's relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against the Company and/or any Covered Parties (defined below), or that the Company may have against Employee.

The claims covered by this Agreement include, but are not limited to claims asserted under or relating to: (i) Title VII of the Civil Rights Act of 1964 and similar state statutes; (ii) Age Discrimination in Employment Act and similar state statutes; (iii) Fair Labor Standards Act or similar state statutes; (iv) Family and Medical Leave Act or similar state statutes; (v) Americans with Disabilities Act or similar state statutes; (vi) injuries you believe are attributable to the Company under theories of product liability, strict liability, intentional wrongdoing, gross negligence, negligence, or respondeat superior; (vii) actions or omissions of third parties you attribute to the Company; (viii) claims brought pursuant to actual or alleged exceptions to the exclusive remedy provisions of state workers compensation laws; (ix) Consolidated Omnibus Budget Reconciliation Act of 1985; (v) federal and state antitrust law; (xi) issues regarding benefits, bonuses, wages, penalties, co-employment, or joint employment; (xii) contracts between you and the Company; (xiii) personal or emotional injury to you or your family; (xiv) federal, state, local, or municipal regulations, ordinances, or orders; (xv) any common law, or statutory law issues relating to discrimination by sex, race, age, national origin, sexual orientation, family or marital status, disability, medical condition, weight, dress, or religion or other characteristic protected by applicable law; (xvi) wrongful retaliation of any type, including retaliation related to workers' compensation laws or employee injury benefit plan actionable at law or equity; and (xvii) misappropriation of confidential information or other acts or omissions by you.

Without limiting the above, the Employee and the Company each specifically acknowledges and agrees that all claims involving minimum wages, overtime, unpaid wages, expense reimbursement, wage statements, and claims involving meal and rest breaks shall be subject to arbitration under this Agreement.

The Employee and the Company each specifically acknowledges and agrees that any claims brought by the Employee against any of the Covered Parties, whether brought jointly or severally with claims against the Company, shall be subject to arbitration under this Agreement. "Covered Parties" means the Company, any entity formerly or currently owned, affiliated, controlled or operated by the Company (a "company entity"), clients of the Company or a company entity, and the former and current officers, directors, managers, employees, owners, attorneys, agents, and vendors of the Company and/or a company entity and/or clients of the Company.

**Claims Not Covered.** This Agreement does not apply to: (i) claims for workers' compensation or unemployment benefits; (ii) claims expressly precluded from being arbitrated by a governing federal statute; (iii)

DocuSign Envelope ID: 348A95E3-1411-4EC2-AE88-E8899EF8FD6B

claims that, under applicable state law that is not preempted by the Federal Arbitration Act, the parties cannot agree to arbitrate; (iv) claims that must be brought before the National Labor Relations Board ("NLRB"); (v) claims for any relief asserted under or governed by the Employee Retirement Income Security Act of 1974 ("ERISA") (the resolution of ERISA claims will be governed by the terms of the applicable plan and/or applicable law); (vi) actions to confirm, vacate, modify, or correct an arbitrator's award; (vii) sexual harassment or sexual assault claims, except if the Employee chooses to submit them to arbitration under the terms of this Agreement; and (viii) nothing in this Agreement prohibits the filing any claim or charge with a government administrative agency (for example, the Equal Employment Opportunity Commission, NLRB, Securities and Exchange Commission, or a similar state regulatory agency). To the extent such a claim is not resolved before the agency, it is subject to arbitration under this Agreement rather than proceeding in court.

**Waiver of Class, Collective, Consolidated and Representative Action Claims.** Each of the Employee and the Company expressly intends and agrees, to the absolute maximum extent permitted by law, that: (a) class action, collective action, or consolidated action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (b) representative action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (c) each will not assert class action, collective action, consolidated action or representative action claims against the other in arbitration or court or otherwise; and (d) the Employee and the Company shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. No arbitrator selected to arbitrate any claim covered by this Agreement is authorized to arbitrate any claim on a class, collective, consolidated, or representative basis.

In the event the waiver of representative actions is found to be unenforceable in whole or in part, then the representative action will be heard in court, not arbitration, as to the portion of the representative claim to which the waiver is found to be unenforceable and all other Covered Claims will remain subject to arbitration. In that event, the representative claim in court shall be stayed until the arbitration is concluded, unless such stay is contrary to applicable law.

Notwithstanding any provision in the applicable arbitration rules, a court of law must resolve any dispute concerning the validity and enforceability of the Agreement, and the validity, enforceability or interpretation of the provisions pertaining to class, collective, and representative action waivers. The arbitrator must resolve all other disputes, including the arbitrability of claims pursuant to such other provisions.

**Neutral Arbitrator.** The arbitration will be administered by an independent and neutral arbitrator from the American Arbitration Association ("AAA") in accordance with the AAA Employment Arbitration Rules and Mediation procedures ("AAA Rules") available online at www.adr.org/employment (or to be provided upon request). If, however, the AAA Rules are inconsistent with the terms of this Agreement, the terms of this Agreement shall govern. The arbitrator has no relationship with the Company and, just as a judge in a lawsuit would, provides an impartial resolution to the dispute. The arbitrator will be selected by mutual agreement of the parties from a list of arbitrators provided by the AAA. If for any reason the AAA will not administer the arbitration, the party seeking arbitration may initiate the arbitration with JAMS (www.jamsadr.com) or other recognized arbitration services provider.

**Claims Procedure.** A demand for arbitration must be in writing and filed with AAA. Written notice of any Company claim will be delivered by certified or registered mail, return receipt requested, to the last known address of Employee. The written notice shall identify and describe the nature of all claims asserted and the facts upon which such claims are based. Written notice of arbitration shall be initiated within the same time limitations that federal or state law applies to those claim(s).

**Arbitration Fees and Costs.** The Employee will pay $200 towards any arbitration filing fee, and the Company will pay all other arbitration filing fees as well as the arbitrator's fees. If any party prevails on a statutory claim that affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the party can recover attorneys' fees and costs to the same extent as if the claim had been brought in court. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

SAppx34

**Applicable Law and Effect of Decisions.**

- Interpretation and Enforcement of the Agreement: The Federal Arbitration Act ("FAA") and federal common law applicable to arbitration shall govern the interpretation and enforcement of this Agreement. If, for any reason, the FAA or federal common law is found not to apply to this Agreement (or its agreement to arbitrate), then applicable state law shall govern.
- Pre-hearing Motions: Only claims that are recognized under existing law may be heard by the arbitrator. Any party to the arbitration shall have the right to file a motion to dismiss and/or a motion for summary judgment, which the arbitrator shall decide by application of the standards under the Federal Rules of Civil Procedure governing such motions.
- Substantive Law: The arbitrator shall apply the substantive state or federal law (and the law of remedies, if applicable) applicable to the claim(s) asserted.
- Written Decisions and Awards: The arbitrator shall render a written decision explaining his or her findings and conclusions. The arbitrator's decision shall be final and binding upon the parties to the arbitration, subject only to review under the FAA (or applicable state law).
- No Preclusive Effect: The arbitrator's decisions and awards shall have no preclusive effect as to issues or claims in any other arbitration or court proceeding, unless all of the parties in the other proceeding were also a named party in the arbitration in which the award or decision was issued.

**Severability.** If any provision of this Agreement to arbitrate is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such adjudication shall not affect the validity of the remainder of this Agreement to arbitrate. The only exception is that this Agreement is not, and shall never be construed as, reformed to be, or enforced as if it were, an agreement to arbitrate claims on a class, collective, consolidated, or representative basis. Stated differently, under no circumstance will a claim be allowed to proceed in arbitration as a class action, collective action, consolidated action, or representative action.

**Waiver of Trial by Jury. Each of the Employee and the Company understands and fully agrees that by entering into this Agreement to arbitrate, each agrees to resolve all claims through arbitration and is giving up the right to have a trial by jury and the right of appeal following the rendering of a decision except on the grounds for reviewing an arbitration award under the Federal Arbitration Act ("FAA") or applicable state law.**

**Term of Agreement.** This Agreement to arbitrate shall survive the termination of Employee's employment.

**Entire Agreement.** This Agreement constitutes the entire agreement between the Company and Employee regarding the subject matter herein and supersedes any and all prior agreements and understandings regarding the subject matter. This Agreement cannot be amended or modified except by a written agreement between the parties.

**Employee Acknowledgment.** I understand that by clicking on the "I Agree and Accept" Button below that I agree to the terms of, and agree to be bound by, this Agreement. I further agree and acknowledge that my acceptance of or continuing employment with the Company provides further evidence of my agreement to accept and be bound by the terms of this Agreement. I understand that this Agreement will remain in effect after my employment ends and that nothing in this Agreement modifies the at-will nature of my employment.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HENRY GRAJALES-EL, Pro Se, <br><br>     Plaintiff, <br><br>  vs. <br><br> AMAZON PRIME, <br><br>     Defendant. | Civil Action No. 2:22-cv-03455 |

**DECLARATION OF PRATEEK KHANNA**

Pursuant to 28 U.S.C. § 1746, I, Prateek Khanna, declare as follows:

1. I am employed by Amazon and have responsibility for certain functions related to the Amazon Delivery Service Partner ("DSP") program, including the online registration process for former DSP TAC Delivery Service LLC ("TACD") employee-drivers.

2. I make this Declaration based on my personal knowledge and my review of Amazon's business records. If called to testify to these facts, I would be competent to do so.

3. Amazon contracted with TACD, a DSP, to provide local delivery services.

4. For customer safety, privacy, and other reasons, before TACD had one of its employees deliver packages to an Amazon customer's home or business, TACD identified that TACD employee to Amazon during an online registration process.

5. The online registration system presented to each TACD employee or prospective employee the full text of a Mutual Agreement to Individually Arbitrate Disputes with TACD (the "Arbitration Agreement"). A copy of the Arbitration Agreement that was presented to each TACD employee or prospective employee during the online registration process is attached as Exhibit A.

6.      Through the online registration process, TACD employees agreed to and accepted the Arbitration Agreement by clicking the "I Agree and Accept" button, which appeared below the full text on the individual's computer or device screen.  When the TACD employee clicked the "I Agree and Accept" button, the system recorded and stored the date of the individual's agreement and acceptance.

7.      I have reviewed Amazon's business records related to the online registration process to determine whether Plaintiff Henry Grajales-EL, who was an employee of TACD, electronically agreed to and accepted the terms of the Arbitration Agreement.

8.      According to these records, Mr. Grajales-EL clicked "I Agree and Accept" for the terms and conditions of the Arbitration Agreement on November 13, 2019.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___ day of September, 2022.

DocuSigned by:

*Prateek Khanna*

F57AD018182D400...

Prateek Khanna

# EXHIBIT A

## MUTUAL AGREEMENT TO INDIVIDUALLY ARBITRATE DISPUTES

It is the Company's goal to provide you (the "Employee") with a rewarding work environment. Disputes related to work can arise, however, and, if not resolved informally, can be disruptive, costly, and time consuming to resolve. Arbitration is an alternative to the traditional lawsuit and may resolve disputes more quickly and with less cost. In a traditional lawsuit, issues are resolved in court by a judge or a jury. In arbitration, issues are resolved outside of court by an independent third-party, known as an arbitrator.

**MANDATORY ARBITRATION. THE EMPLOYEE AND COMPANY AGREE THAT ANY COVERED CLAIM (DEFINED BELOW), WHETHER BASED IN CONTRACT, TORT, STATUTE, COMMON LAW, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY, SHALL BE SUBMITTED TO INDIVIDUAL BINDING ARBITRATION.**

**Covered Claims.** Except as explained in the section "Claims Not Covered" below, this Mutual Agreement to Individually Arbitrate Disputes (this "Agreement") covers all past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, "claims") under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof, and/or (b) a Company policy or practice, or the Company's relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against the Company and/or any Covered Parties (defined below), or that the Company may have against Employee.

The claims covered by this Agreement include, but are not limited to claims asserted under or relating to: (i) Title VII of the Civil Rights Act of 1964 and similar state statutes; (ii) Age Discrimination in Employment Act and similar state statutes; (iii) Fair Labor Standards Act or similar state statutes; (iv) Family and Medical Leave Act or similar state statutes; (v) Americans with Disabilities Act or similar state statutes; (vi) injuries you believe are attributable to the Company under theories of product liability, strict liability, intentional wrongdoing, gross negligence, negligence, or respondeat superior; (vii) actions or omissions of third parties you attribute to the Company; (viii) claims brought pursuant to actual or alleged exceptions to the exclusive remedy provisions of state workers compensation laws; (ix) Consolidated Omnibus Budget Reconciliation Act of 1985; (v) federal and state antitrust law; (xi) issues regarding benefits, bonuses, wages, penalties, co-employment, or joint employment; (xii) contracts between you and the Company; (xiii) personal or emotional injury to you or your family; (xiv) federal, state, local, or municipal regulations, ordinances, or orders; (xv) any common law, or statutory law issues relating to discrimination by sex, race, age, national origin, sexual orientation, family or marital status, disability, medical condition, weight, dress, or religion or other characteristic protected by applicable law; (xvi) wrongful retaliation of any type, including retaliation related to workers' compensation laws or employee injury benefit plan actionable at law or equity; and (xvii) misappropriation of confidential information or other acts or omissions by you.

Without limiting the above, the Employee and the Company each specifically acknowledges and agrees that all claims involving minimum wages, overtime, unpaid wages, expense reimbursement, wage statements, and claims involving meal and rest breaks shall be subject to arbitration under this Agreement.

The Employee and the Company each specifically acknowledges and agrees that any claims brought by the Employee against any of the Covered Parties, whether brought jointly or severally with claims against the Company, shall be subject to arbitration under this Agreement. "Covered Parties" means the Company, any entity formerly or currently owned, affiliated, controlled or operated by the Company (a "company entity"), clients of the Company or a company entity, and the former and current officers, directors, managers, employees, owners, attorneys, agents, and vendors of the Company and/or a company entity and/or clients of the Company.

**Claims Not Covered.** This Agreement does not apply to: (i) claims for workers' compensation or unemployment benefits; (ii) claims expressly precluded from being arbitrated by a governing federal statute; (iii)

SAppx39

claims that, under applicable state law that is not preempted by the Federal Arbitration Act, the parties cannot agree to arbitrate; (iv) claims that must be brought before the National Labor Relations Board ("NLRB"); (v) claims for any relief asserted under or governed by the Employee Retirement Income Security Act of 1974 ("ERISA") (the resolution of ERISA claims will be governed by the terms of the applicable plan and/or applicable law); (vi) actions to confirm, vacate, modify, or correct an arbitrator's award; (vii) sexual harassment or sexual assault claims, except if the Employee chooses to submit them to arbitration under the terms of this Agreement; and (viii) nothing in this Agreement prohibits the filing any claim or charge with a government administrative agency (for example, the Equal Employment Opportunity Commission, NLRB, Securities and Exchange Commission, or a similar state regulatory agency). To the extent such a claim is not resolved before the agency, it is subject to arbitration under this Agreement rather than proceeding in court.

**Waiver of Class, Collective, Consolidated and Representative Action Claims.** Each of the Employee and the Company expressly intends and agrees, to the absolute maximum extent permitted by law, that: (a) class action, collective action, or consolidated action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (b) representative action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (c) each will not assert class action, collective action, consolidated action or representative action claims against the other in arbitration or court or otherwise; and (d) the Employee and the Company shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. No arbitrator selected to arbitrate any claim covered by this Agreement is authorized to arbitrate any claim on a class, collective, consolidated, or representative basis.

In the event the waiver of representative actions is found to be unenforceable in whole or in part, then the representative action will be heard in court, not arbitration, as to the portion of the representative claim to which the waiver is found to be unenforceable and all other Covered Claims will remain subject to arbitration. In that event, the representative claim in court shall be stayed until the arbitration is concluded, unless such stay is contrary to applicable law.

Notwithstanding any provision in the applicable arbitration rules, a court of law must resolve any dispute concerning the validity and enforceability of the Agreement, and the validity, enforceability or interpretation of the provisions pertaining to class, collective, and representative action waivers. The arbitrator must resolve all other disputes, including the arbitrability of claims pursuant to such other provisions.

**Neutral Arbitrator.** The arbitration will be administered by an independent and neutral arbitrator from the American Arbitration Association ("AAA") in accordance with the AAA Employment Arbitration Rules and Mediation procedures ("AAA Rules") available online at www.adr.org/employment (or to be provided upon request). If, however, the AAA Rules are inconsistent with the terms of this Agreement, the terms of this Agreement shall govern. The arbitrator has no relationship with the Company and, just as a judge in a lawsuit would, provides an impartial resolution to the dispute. The arbitrator will be selected by mutual agreement of the parties from a list of arbitrators provided by the AAA. If for any reason the AAA will not administer the arbitration, the party seeking arbitration may initiate the arbitration with JAMS (www.jamsadr.com) or other recognized arbitration services provider.

**Claims Procedure.** A demand for arbitration must be in writing and filed with AAA. Written notice of any Company claim will be delivered by certified or registered mail, return receipt requested, to the last known address of Employee. The written notice shall identify and describe the nature of all claims asserted and the facts upon which such claims are based. Written notice of arbitration shall be initiated within the same time limitations that federal or state law applies to those claim(s).

**Arbitration Fees and Costs.** The Employee will pay $200 towards any arbitration filing fee, and the Company will pay all other arbitration filing fees as well as the arbitrator's fees. If any party prevails on a statutory claim that affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the party can recover attorneys' fees and costs to the same extent as if the claim had been brought in court. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

**Applicable Law and Effect of Decisions.**

- Interpretation and Enforcement of the Agreement: The Federal Arbitration Act ("FAA") and federal common law applicable to arbitration shall govern the interpretation and enforcement of this Agreement. If, for any reason, the FAA or federal common law is found not to apply to this Agreement (or its agreement to arbitrate), then applicable state law shall govern.
- Pre-hearing Motions: Only claims that are recognized under existing law may be heard by the arbitrator. Any party to the arbitration shall have the right to file a motion to dismiss and/or a motion for summary judgment, which the arbitrator shall decide by application of the standards under the Federal Rules of Civil Procedure governing such motions.
- Substantive Law: The arbitrator shall apply the substantive state or federal law (and the law of remedies, if applicable) applicable to the claim(s) asserted.
- Written Decisions and Awards: The arbitrator shall render a written decision explaining his or her findings and conclusions. The arbitrator's decision shall be final and binding upon the parties to the arbitration, subject only to review under the FAA (or applicable state law).
- No Preclusive Effect: The arbitrator's decisions and awards shall have no preclusive effect as to issues or claims in any other arbitration or court proceeding, unless all of the parties in the other proceeding were also a named party in the arbitration in which the award or decision was issued.

**Severability.** If any provision of this Agreement to arbitrate is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such adjudication shall not affect the validity of the remainder of this Agreement to arbitrate. The only exception is that this Agreement is not, and shall never be construed as, reformed to be, or enforced as if it were, an agreement to arbitrate claims on a class, collective, consolidated, or representative basis. Stated differently, under no circumstance will a claim be allowed to proceed in arbitration as a class action, collective action, consolidated action, or representative action.

**Waiver of Trial by Jury. Each of the Employee and the Company understands and fully agrees that by entering into this Agreement to arbitrate, each agrees to resolve all claims through arbitration and is giving up the right to have a trial by jury and the right of appeal following the rendering of a decision except on the grounds for reviewing an arbitration award under the Federal Arbitration Act ("FAA") or applicable state law.**

**Term of Agreement.** This Agreement to arbitrate shall survive the termination of Employee's employment.

**Entire Agreement.** This Agreement constitutes the entire agreement between the Company and Employee regarding the subject matter herein and supersedes any and all prior agreements and understandings regarding the subject matter. This Agreement cannot be amended or modified except by a written agreement between the parties.

**Employee Acknowledgment.** I understand that by clicking on the "I Agree and Accept" Button below that I agree to the terms of, and agree to be bound by, this Agreement. I further agree and acknowledge that my acceptance of or continuing employment with the Company provides further evidence of my agreement to accept and be bound by the terms of this Agreement. I understand that this Agreement will remain in effect after my employment ends and that nothing in this Agreement modifies the at-will nature of my employment.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENRY GRAJALES-EL | : | |
| | : | CIVIL ACTION |
| v | : | |
| | : | NO. 22-3455 |
| | : | |
| AMAZON LOGISTICS, INC. | : | |

### ORDER

**AND NOW**, this  30th   day of September, 2023, upon consideration of Plaintiff's

Motion to Deny Defendant's Proposed Order (ECF No. 7) and Defendant's Motion to Compel

Arbitration (ECF No. 9), and all documents submitted in support thereof, it is **ORDERED** as

follows:

1.      Defendant's Motion to Compel Arbitration (ECF No. 9) is **GRANTED.**[1]

2.      Plaintiff's Motion to Deny Defendant's Proposed Order (ECF No. 7) is

**DISMISSED** as moot.

3.      This Action is **DISMISSED**, and the parties are directed to proceed to arbitration.

**IT IS SO ORDERED.**

BY THE COURT:


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[1] This matter concerns an employment dispute between Henry Grajales-EL ("Grajales-EL"), a pro se litigant and a former employee of TAC Delivery Service, LLC ("TACD"), and Amazon Logistics, Inc. ("Amazon"), which contracted with TACD for delivery services.  (Am. Compl., ECF No. 6; Def.'s Mem. of Law, ECF No. 9-2 at 1.)  Before the Court are:   Grajales-EL's Motion to Deny Amazon's Proposed Order (ECF No. 7) and Amazon's Motion to Compel Arbitration.  (ECF No. 9).  For the following reasons, we dismiss Grajales-EL's Motion as moot, grant Amazon's Motion to Compel Arbitration, and dismiss the action.

Grajales-EL's Motion to Deny Defendant's Proposed Order asserts that Amazon's service of its initial Motion to Compel Arbitration (ECF No. 4) was defective. (ECF No. 7). In response, Amazon withdrew its initial Motion to Compel Arbitration (ECF No. 8) and refiled its Motion with a certificate of service specifying that the Motion, supporting memorandum of law, and exhibits were served on Grajales-El by email with consent and by Fed Ex at a specified address. (ECF No. 9 at 2). Amazon's service, as attested to in its Certificate of Service, complies with the requirements for service. *See* Fed. R. Civ. P. 5(b)(2). Accordingly, Grajales-EL's motion is dismissed as moot.

Turning to Defendant's Motion to Compel Arbitration, Amazon filed this Motion on October 4, 2022. (ECF No. 9-2). Grajales-EL did not file a response, and we apply the Rule 12(b)(6) standard to the Motion. "When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard." *Guidotti v. Legal Helpers Debt Resol., LLC,* 716 F.3d 764, 776 (3d Cir. 2013). "An arbitration clause may be deemed 'apparent'" when the contract in which the arbitration clause appears is "integral to" or relied upon in the complaint. *Lawson v. City of Philadelphia*, No. 18-1912, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the parties are entitled to discovery on the question of arbitrability. *Guidotti*, 716 F.3d at 776. After limited discovery, a renewed motion to compel arbitration is judged under the summary judgment standard. *Id*.

Where, as here, the arbitration agreement is attached to the motion to compel arbitration and the non-moving party has not pointed to "additional facts sufficient to place the agreement to arbitrate at issue" the Rule 12(b)(6) standard applies. *See Deardoff v. Cellular Sales of Knoxville, Inc.*, 2022 WL 407396, at *4 (E.D. Pa. Feb. 9, 2022); *see also Matthews v.* Gucci, No. 21-434, 2022 WL 462406, at *4 (E.D. Pa. Feb. 15, 2022).

Before ordering arbitration, a court must make two threshold determinations: (1) whether the parties entered into a valid arbitration agreement, and (2) whether the specific dispute falls within the scope of that agreement. *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 137 (3rd Cir. 1998). If a valid "agreement delegates the arbitrability issue to an arbitrator" by "clear and unmistakable evidence," "a court may not decide the arbitrability issue," and the Court must only make the first threshold determination before compelling arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

Arbitration agreements are enforceable "save upon such grounds as exist at law or equity for the revocation of any contract," 9 U.S.C. § 2 (1994), or unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628 (1985). When determining whether an arbitration agreement is enforceable, "the court must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of arbitration." *John Hancock,* 151 F.3d at 137 (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). "[T]o determine whether a contract was formed under Pennsylvania law, a court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 533 (3d Cir. 2009).

In this case, the Mutual Agreement to Individually Arbitrate Disputes ("Agreement") at issue is a "clickwrap" agreement in which the agreement "appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed." *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) (citation omitted) (*See* ECF No. 9-3 at 12).   "To determine whether a clickwrap agreement is enforceable, courts … apply traditional principles of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement." *Lewis v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, No. 20-4368, 2020 WL 7260747, at *4 (E.D. Pa. Dec. 10, 2020) (internal quotation and citation omitted).   Courts routinely enforce arbitration clauses contained in clickwrap agreements.  *See, e.g.*, *Pricharda v. Checkr, Inc.*, No. 22-3180, 2022 WL 16749033, at *4 (E.D. Pa. Nov. 7, 2022); *Liptak v. Accelerated Inventory Management, LLC*, No. 20-967, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021).

Here, Grajales-EL clicked that he assented to the Agreement (*see* ECF No. 9-4 at 2), which indicated his intent to be bound by it.  *See Checkr, Inc.*, 2022 WL 16749033, at *4. Parties are presumed to have read the agreements that they have signed.  *See Liptak*, 2021 WL 650514 at *2.  Grajales-EL has not challenged the validity of the Agreement, and the Court finds that the Agreement is valid.

Next, the Court finds that Grajales-EL, who has pled an individual action, agreed to delegate issues of arbitrability to the arbitrator.  First, the Agreement specifies that the arbitrator must resolve disputes concerning the arbitrability of claims.  It states:  "Notwithstanding any provision in the applicable arbitration rules, a court of law must resolve any dispute concerning the validity and enforceability of the Agreement, and the validity, enforceability or interpretation of the provisions pertaining to class, collective and representation action. *The arbitrator must resolve all other disputes, including the arbitrability of claims pursuant so such other provisions.*"  (ECF No. 9-3 at 5) (emphasis added).  Second, the Agreement states that the arbitration will be conducted by an "independent and neutral arbitrator from the American Arbitration Association ("AAA") in accordance with the AAA Employment Arbitration Rules and Mediation procedures ("AAA Rules").  (ECF No. 9-3 at 5).  Specifying that the AAA Rules govern is interpreted as "clear and unmistakable" evidence that the parties intended to delegate questions of arbitrability to the arbitrator.  *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020).  Accordingly, we need not analyze whether the specific dispute falls within the scope of that agreement and refers the matter for arbitration.  *See Henry Schein, Inc.*, 139 S. Ct. at 530.

Next, we address whether Amazon can enforce the Agreement and find that it may do so. Whether a non-signatory to an arbitration agreement may enforce the agreement "is a question of enforceability of the delegation clause."  *See Robertston v. Enbridge (U.S.) Inc.*, No. 19-1080, 2020 WL 9211171, at *3 (W.D. Pa. Aug. 4, 2020) (collecting cases).  Here, the agreement specifies that "a court of law must resolve any dispute concerning the validity and *enforceability* of the Agreement" and that "the arbitrator must resolve all other disputes, including the arbitrability of claims pursuant so such other provisions."  (ECF No. 9-3 at 5) (emphasis added). Accordingly, the question is properly before the Court.

Amazon is a Covered Party under the agreement because it is a client of TACD.  The Agreement defines a Covered Party as "the Company, any entity formerly or currently owned, affiliated, controlled or operated by the Company (a 'company entity'), *clients of the Company or a company entity*, and the former and current officers, directors, managers, employees,

owners, attorneys, agents, and vendors of the Company and/or a company entity and/or clients of the Company." (ECF No. 9-3 at 4-5) (emphasis added). The Agreement specifies that "Employee and the Company each specifically acknowledges and agrees that any claims brought by the Employee against any of the Covered Parties, whether brought jointly or severally with claims against the Company, shall be subject to arbitration under this Agreement." (ECF No. 9-3 at 12).

The Agreement states that claims that relate to TACD's relationship with its customers, vendors or third parties are covered. The Agreement "covers all past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, 'claims') under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof, and/or (b) a Company policy or practice, or *the Company's relationship with or to a customer, vendor, or third party*, including without limitation claims Employee may have against the Company and/or any Covered Parties (defined below), or that the Company may have against Employee." (ECF No. 9-3 at 4) (emphasis added).

"Under Pennsylvania law, 'non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties.'" *Noye v. Johnson & Johnson Servs., Inc.*, 765 F. App'x 742, 746-747 (3d Cir. 2019) (quoting *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. Ct. 2006)). Such a nexus may arise from the relationship between a signatory and a non-signatory or the relationship between the non-signatory and the contract. *Noye*, 765 F. App'x at 746; *see also Richards v. Am. Academic Health Sys., LLC*, No. 20-59, 2020 WL 2615688, at *4 (E.D. Pa. May 22, 2020) (finding that an obvious and close nexus existed when the Plaintiff performed significant work on the behalf of signatory and non-signatory Defendants). In addition, a non-signatory "may fall within the scope of an arbitration clause if that is the signing parties' intent." *Dodds*, 909 A.2d at 351.

This standard is met here, and Amazon may enforce the Agreement. In particular, a nexus exists between Grajales-EL and Amazon because he had to register with Amazon during an online registration process before delivering packages on behalf of Amazon, and Amazon maintained records of his completion of the Agreement. *See Noye*, 765 F. App'x at 747 (finding that there was a sufficient nexus between a former employee, a placement service provider and a non-signatory placement when the placement service provider facilitated the former employee's placement at the non-signatory entity, among other reasons) (*See* ECF No. 9-3 at ¶¶ 4, 7-8). Second, there is a nexus between Amazon and the Agreement because the Agreement specifies that employee's claims against Amazon, as a client of TACD, or that arise out of TACD's relationship with third parties, which includes Amazon, are covered. In addition, it can be inferred that the parties intended for Amazon to be covered because Amazon, as a client of TACD, is a Covered Party. Accordingly, the Court grants Amazon's Motion to Compel Arbitration and dismisses the action. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Poore*, No. 03-0228, 2003 WL 21294995, at *5 (E.D. Pa. Feb. 20, 2003).

4

In the **UNITE STATES COURT**

**EASTERN DISTRICT of Pennsylvania**



HENRY GRAJALES-EL **PRO SE**

Plaintiff,

VS

no: 22-CV-3455

AMAZON LOGISTICS Inc.

**Defendants**

### Certificate of service

I Henry Grajales-EL hereby Affirm and certify that on the Date of **10/30/2023** the defendant was served the following true and correct copies of the following titled documents were sent via first class US postal service to their attorney Kara P. Crawford address: 1701 Market St. Phil. Pa 19103-2921

Documents: 1).  **PLAINTIFF'S Notice of Appeal** for the 3rd Circuit Court of Appeals

Documents: 2).  **U.S. EASTERN district "ORDER" to compel Arbitration**

Plaintiff, HENRY GARJALES-EL

27/10/23

DATE

SAppx46

In the **UNITE STATES COURT**

**EASTERN DISTRICT of Pennsylvania**

HENRY GRAJALES-EL **PRO SE**

Plaintiff,

VS.

AMAZON LOGISTICS Inc.

Defendants

no: 22-CV-3455

**NOTICE OF APPEAL**

Plaintiff Henry Grajales-EL sends this notice of intent to appeal to the judgment of the Easter District Court, dated 30th September 2023. Attached herewith is a copy of the THIRD District court of Pennsylvania judgment against the Plaintiff.

Plaintiff also request of this Honorable court to allow Plaintiff 90 days file his appellate brief.

Respectfully submitted,

Plaintiff, Henry Grajales-EL

10/27/23

Date

SAppx47

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HENRY GRAJALES-EL                        :
                                         :         CIVIL ACTION
          v                              :
                                         :         NO. 22-3455
                                         :
AMAZON LOGISTICS, INC.                   :

### ORDER

**AND NOW**, this 30th  day of September, 2023, upon consideration of Plaintiff's

Motion to Deny Defendant's Proposed Order (ECF No. 7) and Defendant's Motion to Compel

Arbitration (ECF No. 9), and all documents submitted in support thereof, it is **ORDERED** as

follows:

      1.    Defendant's Motion to Compel Arbitration (ECF No. 9) is **GRANTED**.[1]

      2.    Plaintiff's Motion to Deny Defendant's Proposed Order (ECF No. 7) is

**DISMISSED** as moot.

      3.    This Action is **DISMISSED**, and the parties are directed to proceed to arbitration.

      **IT IS SO ORDERED.**

                                 **BY THE COURT:**

                                 */s/ R. Barclay Surrick*
                                 **R. BARCLAY SURRICK, J.**

---

[1] This matter concerns an employment dispute between Henry Grajales-EL ("Grajales-EL"), a pro se litigant and a former employee of TAC Delivery Service, LLC ("TACD"), and Amazon Logistics, Inc. ("Amazon"), which contracted with TACD for delivery services. (Am. Compl., ECF No. 6; Def.'s Mem. of Law, ECF No. 9-2 at 1.)  Before the Court are:  Grajales-EL's Motion to Deny Amazon's Proposed Order (ECF No. 7) and Amazon's Motion to Compel Arbitration.  (ECF No. 9).  For the following reasons, we dismiss Grajales-EL's Motion as moot, grant Amazon's Motion to Compel Arbitration, and dismiss the action.

In this case, the Mutual Agreement to Individually Arbitrate Disputes ("Agreement") at issue is a "clickwrap" agreement in which the agreement "appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed." *Feldman v. Google*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) (citation omitted) (*See* ECF No. 9-3 at 12). "To determine whether a clickwrap agreement is enforceable, courts … apply traditional principles of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement." *Lewis v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, No. 20-4368, 2020 WL 7260747, at *4 (E.D. Pa. Dec. 10, 2020) (internal quotation and citation omitted). Courts routinely enforce arbitration clauses contained in clickwrap agreements. *See, e.g.*, *Pricharda v. Checkr, Inc.*, No. 22-3180, 2022 WL 16749033, at *4 (E.D. Pa. Nov. 7, 2022); *Liptak v. Accelerated Inventory Management, LLC*, No. 20-967, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021).

Here, Grajales-EL clicked that he assented to the Agreement (*see* ECF No. 9-4 at 2), which indicated his intent to be bound by it. *See Checkr, Inc.*, 2022 WL 16749033, at *4. Parties are presumed to have read the agreements that they have signed. *See Liptak*, 2021 WL 650514 at *2. Grajales-EL has not challenged the validity of the Agreement, and the Court finds that the Agreement is valid.

Next, the Court finds that Grajales-EL, who has pled an individual action, agreed to delegate issues of arbitrability to the arbitrator. First, the Agreement specifies that the arbitrator must resolve disputes concerning the arbitrability of claims. It states: "Notwithstanding any provision in the applicable arbitration rules, a court of law must resolve any dispute concerning the validity and enforceability of the Agreement, and the validity, enforceability or interpretation of the provisions pertaining to class, collective and representation action. *The arbitrator must resolve all other disputes, including the arbitrability of claims pursuant so such other provisions.*" (ECF No. 9-3 at 5) (emphasis added). Second, the Agreement states that the arbitration will be conducted by an "independent and neutral arbitrator from the American Arbitration Association ("AAA") in accordance with the AAA Employment Arbitration Rules and Mediation procedures ("AAA Rules"). (ECF No. 9-3 at 5). Specifying that the AAA Rules govern is interpreted as "clear and unmistakable" evidence that the parties intended to delegate questions of arbitrability to the arbitrator. *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020). Accordingly, we need not analyze whether the specific dispute falls within the scope of that agreement and refers the matter for arbitration. *See Henry Schein, Inc.*, 139 S. Ct. at 530.

Next, we address whether Amazon can enforce the Agreement and find that it may do so. Whether a non-signatory to an arbitration agreement may enforce the agreement "is a question of enforceability of the delegation clause." *See Robertston v. Enbridge (U.S.) Inc.*, No. 19-1080, 2020 WL 9211171, at *3 (W.D. Pa. Aug. 4, 2020) (collecting cases). Here, the Agreement specifies that "a court of law must resolve any dispute concerning the validity and *enforceability* of the Agreement" and that "the arbitrator must resolve all other disputes, including the arbitrability of claims pursuant so such other provisions." (ECF No. 9-3 at 5) (emphasis added). Accordingly, the question is properly before the Court.

Amazon is a Covered Party under the agreement because it is a client of TACD. The Agreement defines a Covered Party as "the Company, any entity formerly or currently owned, affiliated, controlled or operated by the Company (a 'company entity'), *clients of the Company or a company entity*, and the former and current officers, directors, managers, employees,

3

owners, attorneys, agents, and vendors of the Company and/or a company entity and/or clients of the Company." (ECF No. 9-3 at 4-5) (emphasis added). The Agreement specifies that "Employee and the Company each specifically acknowledges and agrees that any claims brought by the Employee against any of the Covered Parties, whether brought jointly or severally with claims against the Company, shall be subject to arbitration under this Agreement." (ECF No. 9-3 at 12).

The Agreement states that claims that relate to TACD's relationship with its customers, vendors or third parties are covered. The Agreement "covers all past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, 'claims') under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof, and/or (b) a Company policy or practice, or *the Company's relationship with or to a customer, vendor, or third party,* including without limitation claims Employee may have against the Company and/or any Covered Parties (defined below), or that the Company may have against Employee." (ECF No. 9-3 at 4) (emphasis added).

"Under Pennsylvania law, 'non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties.'" *Noye v. Johnson & Johnson Servs., Inc.*, 765 F. App'x 742, 746-747 (3d Cir. 2019) (quoting *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. Ct. 2006)). Such a nexus may arise from the relationship between a signatory and a non-signatory or the relationship between the non-signatory and the contract. *Noye*, 765 F. App'x at 746; *see also Richards v. Am. Academic Health Sys., LLC*, No. 20-59, 2020 WL 2615688, at *4 (E.D. Pa. May 22, 2020) (finding that an obvious and close nexus existed when the Plaintiff performed significant work on the behalf of signatory and non-signatory Defendants). In addition, a non-signatory "may fall within the scope of an arbitration clause if that is the signing parties' intent." *Dodds*, 909 A.2d at 351.

This standard is met here, and Amazon may enforce the Agreement. In particular, a nexus exists between Grajales-EL and Amazon because he had to register with Amazon during an online registration process before delivering packages on behalf of Amazon, and Amazon maintained records of his completion of the Agreement. *See Noye*, 765 F. App'x at 747 (finding that there was a sufficient nexus between a former employee, a placement service provider and a non-signatory placement when the placement service provider facilitated the former employee's placement at the non-signatory entity, among other reasons) (*See* ECF No. 9-3 at ¶¶ 4, 7-8). Second, there is a nexus between Amazon and the Agreement because the Agreement specifies that employee's claims against Amazon, as a client of TACD, or that arise out of TACD's relationship with third parties, which includes Amazon, are covered. In addition, it can be inferred that the parties intended for Amazon to be covered because Amazon, as a client of TACD, is a Covered Party. Accordingly, the Court grants Amazon's Motion to Compel Arbitration and dismisses the action. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Poore*, No. 03-0228, 2003 WL 21294995, at *5 (E.D. Pa. Feb. 20, 2003).

HENRY GRAJALES-EL
660 BOAS ST #1416
HARRISBURG PA 17102

**CERTIFIED MAIL**



7022 1670 0003 1375 1010

*Retail*





19106

**RDC 99**

U.S. POSTAGE PAID
FCM LG ENV
HARRISBURG, PA 17111
OCT 30, 2023

**$6.42**

R2305K134981-02

Clerk of the
U.S. EASTERN Dist. Court
601 MARKET St

SAppx51

CLOSED,APPEAL

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:22−cv−03455−RBS

GRAJALES−EL v. AMAZON PRIME
Assigned to: DISTRICT JUDGE R. BARCLAY SURRICK
Demand: $10,000,000,000
Case in other court:  U.S. Court of Appeals for the Third
Circuit, 23−02984
Lancaster County Court of Common Pleas,
CI−22−02795
Cause: 28:1441 Notice of Removal

Date Filed: 08/29/2022
Date Terminated: 10/02/2023
Jury Demand: None
Nature of Suit: 320 P.I.: Assault Libel &
Slander
Jurisdiction: Diversity

| Date Filed | # | Docket Text |
|---|---|---|
| 08/29/2022 | 1 | NOTICE OF REMOVAL by AMAZON LOGISTICS, INC. (Filing fee $ 402 receipt number APAEDC−16137708), filed by AMAZON LOGISTICS, INC.. (Attachments: # 1 Exhibit Complaint, # 2 Exhibit Proof of Service, # 3 Exhibit, # 4 Exhibit State Court Docket, # 5 Civil Cover Sheet, # 6 Designation Form, # 7 Certificate of Service)(Crawford, Kara) (Entered: 08/29/2022) |
| 08/29/2022 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by AMAZON PRIME. (Attachments: # 1 Certificate of Service)(Crawford, Kara) (Entered: 08/29/2022) |
| 08/29/2022 | 3 | PRO SE NOTICE RE:GUIDELINES (sbt) (Entered: 08/29/2022) |
| 08/30/2022 | | DOC 3 MAILED TO PRO SE (rf, ) (Entered: 08/30/2022) |
| 09/06/2022 | 4 | MOTION to Compel *Arbitration* filed by AMAZON PRIME.Certificate of Service. (Attachments: # 1 Memorandum of Law in Support, # 2 Exhibit A − Declaration of Prateek Khanna and Declaration of Christopher Magee, # 3 Text of Proposed Order)(Crawford, Kara) (Entered: 09/06/2022) |
| 09/15/2022 | 5 | Rebuttal by HENRY GRAJALES−EL to Defendant's Notice of Removal. (fdc) (Entered: 09/19/2022) |
| 09/27/2022 | 6 | AMENDED COMPLAINT against AMAZON PRIME, filed by HENRY GRAJALES−EL.(fdc) (Entered: 09/28/2022) |
| 09/29/2022 | 7 | HENRY GRAJALES−EL'S MOTION to Deny Defendants' Proposed Order, Certificate of Service. (fdc) Modified on 10/4/2022 (tjd). (Entered: 10/03/2022) |
| 10/04/2022 | 8 | NOTICE of Withdrawal of re 4 MOTION to Compel *Arbitration of Plaintiff's Claims* (Crawford, Kara) (Entered: 10/04/2022) |
| 10/04/2022 | 9 | MOTION to Compel *Arbitration* filed by AMAZON PRIME.Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum of Law, # 3 Declaration of Christopher Magee, # 4 Declaration of Prateek Khanna)(Crawford, Kara) (Entered: 10/04/2022) |
| 10/04/2022 | 10 | NOTICE of Appearance by RICHARD G. ROSENBLATT on behalf of AMAZON PRIME with Certificate of Service(ROSENBLATT, RICHARD) (Entered: 10/04/2022) |
| 10/28/2022 | 11 | Original Record together with certified copy of docket entries received from Court of Common Pleas of Lancaster County. (afm) (Entered: 10/31/2022) |
| 10/02/2023 | 12 | ORDER THAT DEFENDANT'S MOTION TO COMPEL ARBITRATION IS GRANTED. PLAINTIFF'S MOTION TO DENY DEFENDANT'S PROPOSED ORDER IS DISMISSED AS MOOT. THIS ACTION IS DISMISSED, AND THE PARTIES ARE DIRECTED TO PROCEED TO ARBITRATION; ETC.. SIGNED BY HONORABLE R. BARCLAY SURRICK ON 9/30/23.10/2/23 ENTERED AND E−MAILED. COPY TO ARB CLERK, NOT MAILED TO PRO SE (JL) (Entered: |

| | | |
|---|---|---|
| | | 10/02/2023) |
| 10/02/2023 | | Document 12 mailed to HENRY GRAJALES–EL. (mac) (Entered: 10/02/2023) |
| 11/01/2023 | 13 | NOTICE OF APPEAL as to 12 Order on Motion for Order,, Order on Motion to Compel, by HENRY GRAJALES–EL. Copies to Judge, Clerk USCA, Appeals Clerk. (Filing Fee Not Paid/IFP Not filed) (fdc) Modified on 11/2/2023 (tjd). (Entered: 11/02/2023) |
| 11/02/2023 | 14 | NOTICE of Docketing Record on Appeal from USCA re 13 Notice of Appeal filed by HENRY GRAJALES–EL. USCA Case Number 23–2984 (fdc) (Entered: 11/02/2023) |
| 11/07/2023 | 15 | Certificate of Good Standing requested by Kara P. Emrich – Bar ID 327383 – originally admitted October 23, 2019 – contact information: kara.emrich@morganlewis.com – receipt number APAEDC–17056670. (Emrich, Kara) **(TRANSFERRED TO CASE 23–gs–0001)** Modified on 11/7/2023 (nd). (Entered: 11/07/2023) |

# CERTIFICATE OF SERVICE

I, Michael E. Kenneally, counsel for Appellee, certify that, on March 6, 2024, I electronically filed the foregoing Supplemental Appendix with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participant:

> Henry Grajales-EL
> 660 Boas Street, No. 1416
> Harrisburg, PA 17102
> 2021henkel@gmail.com
>
> *Appellant*

Dated: March 6, 2024                          s/ Michael E. Kenneally
                                              MICHAEL E. KENNEALLY